Duarte v. City of Lewisville, Texas Good afternoon. May it please the Court. The primary issue I think I'm going to be able to talk to today within our time limits is the question of whether the asserted right to establish a home is of sufficient importance to warrant analysis under the test set out in Matthews v. Eldredge concerning procedural due process. The district court in this case found that it had to be a fundamental constitutional right, that is one that would pass the Glucksburg test of being deeply rooted and so deeply rooted and traditional in the histories of our nation that civilized society basically couldn't exist without its recognition. That issue actually was an issue in the case of Kerry v. Den, which resulted in a fractured decision by the U.S. Supreme Court. One opinion was written for the Court for the result by Justice Scalia, but the mistake made by the district court, and it did argue Justice Scalia in part of that opinion that was joined by two other justices, did say that we need to start all over and only allow Matthews v. Eldredge liberty interests if they are fundamental. There is a separate opinion joined by, it was actually a dissenting opinion joined by four justices that was written by Justice Breyer that pointed out that for a very long time in the Court's history, liberty interests could be something less than fundamental liberty interest and be, and warrant procedural due process analysis under Matthews v. Eldredge. You can see that you don't have a fundamental liberty interest? No, we don't, but we don't think this court has to reach that question with regard to whether, and actually the key term is the right to establish a home. You can't be banned, your client can't be banned from the town, can they? They have been. I know, that's what I'm, could the city, I'm going to ask the city this, can you ban someone from a town? I mean, as far as a residency? Yes. No, no, not at least without procedural due process. Right, without procedure. We're not making a substantive due process claim that it's so fundamental that no amount of procedures would be sufficient to allow a restriction. What we're saying is, is that we're entitled to an individual assessment because the right to establish a home is sufficient to warrant a notice and opportunity to be assessed. There are other components of Matthews v. Eldredge, such as the risk of an erroneous deprivation. What would the issue, what would the substantive issue to be tried that you want the procedure? I think it would be similar to, as a matter of fact, your opinion for the court in Mazer v. Livingston, where you'd have some level, maybe not as elaborate, but, or Morrissey v. Brewer, or something of that nature. I know in Texas we have driver's license suspension hearings as a result of Bell v. Burson, which I think is probably a lesser liberty interest than what we're dealing with in this case. And it could be, and of course you have Gomez v. Lopez, where you have school suspensions and things of that nature. There's a whole continuum of different kinds of formality that might or might not be required. We think that it should be at least equal to Bell v. Burson. What would you be trying? Okay, it would be Mazer v. Dredge or Mazer v. Livingston. Whether you'd be a dangerous? Yeah, yeah, yeah. Whether he currently poses a threat to the community by reason of a lack of sexual control. But if the city doesn't accord that to anyone? In this case, no. It's triggered solely by a State law requirement that the person register. I guess my, could you address the 8th Circuit case that the city brings up, the Miller decision? Yes. I don't agree with that. That would pre-dermit the question of a liberty interest. That would just say, well, your client received full and fair opportunity to challenge his status. In turn, with no expose factor issue prepared before us, Texas has said anyone who is a sex offender is subject to restrictions. Yeah. I think as the argument goes, made by opposing counsel, Connecticut v. Doe was a case of registration, number one, not a deprivation of a right to reside somewhere. In Smith v. Doe, where they actually talk about registration, they distinguish it from the ability of a person to choose where to live. They actually put that in there. Right. But parole circumstances occur all the time based on a conviction. This is not a parole case. But parole, but it's the exact same, it's the equivalent. You're being told where you can reside, who you can associate with. I wouldn't agree respectfully. I think that you have a continuum of liberty interest, one category people in prison, and actually it was talked about in the Mesa case, people in prison, people on parole, people that are no longer on parole. And of course, you could even have people that have never gotten a traffic ticket, I guess, if you wanted to have a traffic ticket. Right. But Texas is saying all sex offenders. That's right. That's right. Without bleeding into the equal protection argument, maybe just answer my question, what is wrong about Judge Colliton's reasoning in the Miller decision? Okay. What's in the Miller decision? It would take me a while to describe it. I know there's a number of different claims, ex post facto, which No, no. Just on the procedural due process. Okay. I don't agree that a prior criminal conviction forever after disposes of any and all liberty interest of a person forever to choose where to live. And the reason why I say that is, is because when people are no longer on parole or probation, they have a greater liberty interest than someone who's even on parole or probation. And it was discussed in Mesa v. Livingston. It's been discussed in a lot of different cases. And even the Supreme Court of California and Henry Taylor found that people on parole had a liberty interest to be free from these residency restrictions unless they acquired an individualized assessment, not a blanket one-size-fits-all. So that would be my reason for saying the majority opinion or the Court of Appeals decision in Miller was in error. I am on all fours and agree with the District Court's decision that was reversed by the Court of Appeals. I think it's correct. And the other decisions I cite, and, of course, we last Friday, the Sixth Circuit, the United States Court of Appeals for the Sixth Circuit, didn't address the procedural due process claim we have, but they did find that these residency restrictions, among others, were ex post facto punishment. Right. Because there's a difference between these type of restrictions and just merely requiring someone to register. Because when you require someone to register, they're just making I mean, that's the Snyder decision was based on an argument that you aren't pursuing anymore. That's right. We abandoned the ex post facto. And we're not here to even discuss that today. And I don't can't say I regret it too much, because I really think that this argument is a better way of handling it and it's a more direct, without a question of when the conditions were imposed or et cetera, et cetera, when the I guess maybe more fundamentally, since you're familiar with all these cases. Right. I appreciate that. Connecticut v. Doe, where is it Rehnquist who just says we're going to put aside whether there's a liberty interest? Because there is some complication in our case law. If you're convicted, the stigma alone doesn't give you a liberty interest. Stigma Plus does. But why wouldn't we in this case put aside the question and just say did your client receive the process he's claiming? And here, when he had the opportunity, I don't  In this case, we've got not only the registrant, but we've got a wife and children where the to break up or they have to find someplace else to live. And, you know, this Court, not only in Meyer v. State of Nebraska in 1923, expressly stated that the right to establish home is fundamental, but this Court in Cabral v. Town of Youngsville But that's jumping to the liberty question and crossing over with substantive grasses you're not making. I guess I'm just still focused on the process given for In Smith v. Doe and Connecticut v. Doe, there was not a need for procedural due process because there was not a sufficient liberty interest because of the rubric about Stigma Plus or whatever, because it was a reputational harm kind of claim. I went through your brief to say, well, where's the signal from you, either for legal authority or for just practically what the process would be? And as I see it, it's just in your foot note 64, you said, well, the city could have voluntary committees that would create themselves and adjudicate dangerousness. This case, this is before the Court of Appeals on a motion for summary judgment filed by my opposing counsel. They did not claim that they were entitled to judgment on the other two prongs under Matthews v. Eldridge. They only claimed, their only argument was, and the only ruling by the district court on the procedural due process was on this liberty interest, and it miscited Justice Scalia's opinion as a majority decision, which it was not. I pointed it out in my brief. I pointed it out to the district court. When the magistrate relied on that, I pointed it out to my objections to the recommendation. The district court ignored it. I put it in my opening brief in this court. My opposing counsel continues to— Well, that's true. You're right on all that, and my question is in a different direction. Right. And so what I'm saying is— Let me ask you just one thing. Is there a process in Texas to get out from under the sex offender provisions, you know, after you're convicted and you're declared a sex offender? Isn't there some way you can—some procedure to terminate sex offender status? Not meaningful. It was only adequate to continue for the state of Texas to receive their federal government. I went to a seminar just about a week ago with an expert about deregistration, and he's only aware, I believe, of two people since it began a decade or more ago. I thought his residency restriction ends in 2020. No, no, no. The registration requirement. I thought you meant— But once he's no longer a sex offender, then— Okay. There's two categories. Some people have to register for 10 years after they've And then there's another category. You have to register for life. All right? And they're in response to the threat of the federal government cutting off federal funding for the crime control under the Crime Control Bill. They eventually succumbed to the pressure and adopted a procedure that's very Byzantine, and as my understanding, there's been only just a few, less than a handful of people in the 10 or 12 years that have somehow gotten through this procedure because there's so many disqualifications. If you mash them all up, there's nobody left. But that's a matter of state law, and we're not challenging the registration. We're talking about whether there has to be an individual assessment when you are going to take away liberty interest. And the process that the city of Louisville has adopted, like many other cities in Texas—in fact, virtually all of them—is a blanket rule where we're just going to, by legislative declaration, claim that everybody who has to register just automatically can't live in our town. Well, can't—now, that's a broad statement. Well, okay. You didn't challenge as clear error the district court magistrate finding that there are areas here. Well, that was actually came up on the first appeal, and it was clearly erroneous on the first appeal. The evidence is the same, as I pointed out. It's .025. You've got the map I presented to you. There's 37,000-some-odd homes. The magistrate has accepted factually the city's representations that there had been, and that's not— I don't believe that's true. I don't believe that's true in this case. I think it was the same kind of argument about there are so many houses that could be available at some point in time. They're not available because they're all occupied. But if you look at just the .025 percent of homes outside the protected zone, and if you look at that map, the only places in white don't have any homes. That would be veering towards a substantive due process argument. Right. No, it's a procedure. Okay. I agree with you. If you've got a liberty interest to establish a home, I don't think it's relevant that you may be able to go to another state for a home or go to the moon for a home. If the Supreme Court says you have a liberty interest to go somewhere else, it's not really a remedy or does not diminish the claim to the liberty interest. Is that not for us? Because that, to me, seems the more compelling argument. Yeah. Yeah. Yeah. And I agree with you. I don't think the relative—I don't think we should resolve this by everybody deciding what percentile of available homes there has to be before there's a deprivation of a liberty interest. There either is or there isn't. And I know that in the Mesa case, there was an argument by the Attorney General's Office of Texas that it's a question of this procedure versus this kind of deprivation versus that kind of deprivation in sex offender conditions. And that's not what we're dealing with here. We're talking about a liberty interest to establish a home and having a blanket thing where everybody who has to register, where also there is no individualized assessment, is if you are on probation or convicted of an enumerated list of offenses under state law, then the ordinance is triggered by that and you have to leave town. There's just not an— Tell us what you want us to rule whenever you come back here on your rebuttal. Yes, I can do that. Specifically, what are our possibilities to rule for you? Yeah. Thank you. Okay. Thank you, sir. Mr. Messer. May it please the Court, the crux of the appellant's case involves a simple issue. Whether convicted child sex offenders have a constitutionally protected right, a liberty interest, to live where they please, particularly in places, legally protected places, where children commonly gather, like parks. Do you agree with them that what we're dealing only with in this appeal is liberty interest and not dealing with the method of the Matthews v. Eldredge hearing? We're not dealing with who would be on this committee or any of this. We're only dealing with is there a liberty interest? I think that's the threshold question, whether there's a liberty interest involved. And the issue has been addressed several times by the courts. The interest in living precisely where one wants to or chooses is not fundamental within our constitutional scheme. Precisely. Can you kick somebody out of the town? Our ordinance, there's no evidence in this record about that, and that's not in front of this court. That really goes to an ex post facto. You're going to defend this as a fund, whether it's fundamental or not, that question's relevant. What's your answer legally to that question? Could a city enact an ordinance that would banish people based on their... Well, the banishment concept is what I understand in part of the ex post facto claim, which has been abandoned and is not in front of this court. No, I'm not talking about ex post facto. I'm talking about up front, can you say going forward we're going to banish people who do this act or whatever? They're forever banished from our town, and it could be they haven't done it yet, and it's going forward, so there's no ex post facto. Well, the ordinance that's in front of this court deals with a triggering event, which is if there's a convicted child sex offender required to register with the state, no matter what his level has been assessed at by the state, the ordinance applies. There's reason that it applies. It's to protect children, which are the most vulnerable people in our society. There's a compelling interest to do that, and there are findings in this ordinance that give legitimate, compelling reasons for the city to be able to do that. And we're not at all, I don't want you to take some hostility towards interest of children in answering, asking questions. That's certainly not, that's not the intent of the questions, and we're not dealing with whether there was a compelling interest in passing the statute right now. I don't think we're analyzing that yet. I mean, there might be a strict scrutiny question later, but we're just trying to right now figure out, is the test, you say that you don't have a right to live precisely in the home that you want, but do you have a right to not be banished from a community? And at what point do you get between precisely and banished? Is it at .025 percent, or is it that you can only live in three-fourths of the areas, or how does that work, and what does the case law say? I can tell you, the cases that have addressed this issue, this right to live where you would like to live, the case law has been uniform. There's no case that I'm aware of to date in the United States that's recognized that this right to live where you want is constitutionally protected. And the appellants, if you read their briefing, they don't cite a single case that supports that. And do all of those cases assume that you are not banned completely from the geographic designation? I'd have to go back and look. There's about, to my knowledge, there's about seven, at least seven cases across the United States that have addressed this issue. They've all come down in favor of the city's position in this case, and I don't, I'd have to go back and look into the facts of every single one. They weren't banning cases. If you look at the facts in this case, I don't think the evidence shows that the appellants were banned, or at least Mr. Duarte was banned. Is 3025 correct, or is that fact, or is that clearly erroneous? What's the situation? That's an assumption, a supposition made by appellants counsel that was introduced in a footnote in briefing the last time the case was here. There's not any evidence of that in the record. The evidence shows, we put it in the record. Our court's first decision is a published decision. Right. And they say your view of the facts is clearly erroneous, that review of the record would reveal that only nine homes were for sale or rent outside the buffer zone. So, you have to accept that. If you, if you look forward and see what's in the summary judgment record, which was after that opinion, we put in evidence from a planner that talks about the number of residences that were available. So, as of June 2015, 495 residential properties outside these protected areas. Is that right, or has the magistrate embraced those facts and the district court here, and therefore that was, as a result of footnote two, it was litigated and the issue's not before us? Is that your position, that there is ample housing available? Yeah, if you look in the record, I don't know. What did the court find the magistrate judge pulled on this point, or did the court not? Yeah, I don't know that she, I don't remember that the judge or the magistrate analyzed that. She couldn't have resolved disputed issues, could she? I'm sorry? She couldn't have resolved disputed issues of fact. No, but that was not disputed. The record, the record in front of this court and in front of the district court and the district court, these are issues of law. These are issues of law that the court is reporting. Well, what about the, whether there are in the number of houses that were available to this case? Those aren't disputed. Those were in. 49 or 495. Sounds like there's a dispute. Well, I think, I think the justice is talking about what was in front of the court, if I understand you correctly, at the standing proceeding, and then the record was developed after that for summary judgment purposes, and I'm only, and that's what's in front of the court today. I'm only talking about the record that was undisputed factually in front of the district and the magistrate court that's in front of the court, this court today. Is there a rational basis for the distinction between sex offenders who can and cannot seek a hearing? Well, I think, I think you're talking about the equal protection claim, if I understand you correctly, and there is no distinction between this alleged distinction in our ordinance. Our ordinance, the city's ordinance deals with one thing, which is convicted child sex offenders, regardless of whatever their position or assessment is by the state, and they have to register by the state. If that, if they meet that condition, then the ordinance applies to them, one and all, equally, without distinction. So, I don't see that the makes classes. A defendant like Duarte could never, there's nothing he could do to meet it. He's excluded from it because he's no longer on supervision. I understand that, but I'm saying. Not a classification. There's no way he can accomplish that. I understand. Yeah, I don't think it is a classification. I think it applies to no matter what assessment or what supervision there is. There's six affirmative defenses in our ordinance. That only deals with one of them, and I can't see that then, if that's the case, then there are six classifications from our ordinance. Our classification deals with one thing, which is convicted child sex offenders, and whether they have to be registered with the state, and if so, then other issues apply, and the city's going to give deference. In that instance, the city's going to give deference to the convicting court if there's a hearing so that that judge can determine, for whatever reason, and there are multiple reasons, that the 1,000 foot restriction based upon the state doesn't apply, and if that's true, the city's going to give deference. That would make sense to me, just superficially. The city's drawn distinctions. People still under supervision, people not, and the argument would be there's a rational basis for that classification because one set of those defendants is still under court control, can move to modify, or if doing bad things, can be revoked, which I think happened to Duarte, so there would be a rational basis, but it wouldn't be denying the existence of a classification in the first place. Yeah, I just don't see that there's a classification in the first place. Well, so remind me, was Duarte fully discharged, or was he never on community supervision? I don't recall. I don't recall that he was on community supervision. I thought he was revoked. He was revoked. He was sent to prison, and then he served for three years, and then he's out, and now he still has to report to the communities, and that's kind of the extent of my knowledge of that. I thought the basis of the equal protection claim was he was not under supervision. Well, that's, they're trying to make a distinction between. I know, but I mean, I thought that was his argument was I'm not under supervision, and these guys who are under supervision have a break that I don't get. I understand, and I'm saying I don't think that's a classification that, I don't think that's a classification for equal protection. Yeah, I understood that. Isn't it counterintuitive, at least, that the people currently under active supervision are treated better than the people who are fully discharged? I don't know that they are treated better. The issue is if you're a convicted child sex offender, then there are areas, 1,500-foot zones, that you can't live within in Louisville with parks and schools and rec centers, et cetera. So, it doesn't have anything to do with whether they're on supervision or not. If it goes forward, and they want to argue that defense is an affirmative defense, that's their burden, and they can do that if they choose. But he can't ever argue it, and they can't. I understand, but- He can say, my child is in this school, and it's a magnet school or a good school, or my child has a special need and has to be in this school, and I'll do extra conditions if you just let my child live in this place, whereas this person over here can't do any of that. I understand that, and I can hear the compelling statement that you're making, but felons have restrictions on their rights that other people don't. They don't necessarily are able to serve on juries or own guns or vote, and there are some restrictions, I think, that can be applied to felons. But don't you look to see whether there's a reason, a rational reason for the difference? Isn't that the way you analyze that issue? Yeah, the way I'm looking at it is there's a rational basis for this ordinance. Okay. And it's to protect children. So- Would the ordinance survive strict scrutiny if it had to? I think it's narrowly drawn that it could, yes. And that was part of our argument in summary judgment proceedings, although that wasn't the basis of the district court's rulings. Did you argue Miller below? Yes. You did? Yes. And is that an argument you continue to favor as an alternative argument? You're talking about the Miller case out of the Eighth Circuit? Yes. So that wouldn't require us to decide the more complicated stigma plus liberty interest question. What I recall about Miller is that it dealt with whether a right to live somewhere is a protected liberty interest, and they held that it was not. Well, I think they held that you had the defendant, when he had the opportunity to challenge his conviction, had full process, and therefore the court assumed arguendo. But the district court didn't rule that here, and I'm interested in you're telling me that you did argue that as an alternative ground, and you persist with that, but you favor finding that the defendant, Duarte, has no liberty interest at all. Yeah. Is that fair? It is fair to say that we do not believe there's any liberty interest at stake in this case, and that there's no process that's due as a basis of that. But if we were to find there is a liberty interest under Meza, Coleman, Jennings, if we read those cases to suggest there is one, given the restrictions that the Sixth Circuit just looked at and analogous ones, do you still win or not because he had his process, his full and fair opportunity? Sure. He had process that was due, and we did argue this in the summary judgment motion in the underlying case. He had process that was due, and it was given to him. He was tried and convicted by a jury. So, you know, that process has been, has taken place. And speaking about the right of this appeals that I'm aware of, the Eighth Circuit and the Second Circuit, and they both say that that's a fact that's not relevant to the regulatory scheme and don't think that it's applicable. Right. They hold that the convicted child sex offender is not entitled to a hearing to establish a fact that's not relevant to the statutory scheme. That's the Doe v. Miller case and also the Doe v. Cuomo case out of the Second Circuit. They also talk about when these ordinances, these laws are passed, that the council or the state legislatures are making legislative decisions that apply to all convicted child sex offenders as long as they're required to register with the state. And so we don't believe that type of hearing, first of all, is required. Secondly, practically, I'm not even sure how that would happen. Well, you said the record suggests in the briefs that a city called Westlake something does just that. That there is a city that does that? In the briefings, opposing counsel mentioned, I forget the name of the city, Westlake something. There may be one city in Texas that has that process. I've — that's all my — all my practice is, is representing local governments. And I'm not — I'm not aware of any city that does that. Well, the Federal — I mean, the exemption you give essentially gives that process for people under supervision. They get to come in and say — right? So that's — They — but that's an adjudication by the convicting court that they can present evidence of — It's a preexisting court system. That's right. It's not — It's not what the city has to do. Exactly. That's right. It's not — it's not a system — Am I right that the record said his residency restrictions end in 2020, or have I just — That's my recollection. That's your recollection? That's my recollection of what's in the record. Yes. And tell me about — there is a procedure for him to shorten that time? No, I — it's my understanding that that time frame's been dictated by the state. It has nothing to do with the city ordinance. I don't mean that. I mean, but can he go to some procedure the state affords to get the time — registration time reduced? I'm not — I'm not aware of that procedure. There may very well be, but I'm not — I can't represent that to the court. So, in going back to whether Mr. Duarte has an unfettered right to live where he wants to live, the courts that have looked at that uniformly decide against that. Decided — was decided nearly 30 years ago in the Pastrallo v. University of South Dakota case. The Eighth Circuit said in that case, we cannot agree that the right to choose one place of — one's place of residence is necessarily a fundamental right. Cases too numerous to mention have upheld restrictions on this interest. The Eighth Circuit, again, said the same thing in Doe v. Miller and Williams v. Little Rock Police Department. The Second Circuit Court of Appeals in Stone v. Pomaho rejected that notion, as did the Northern District of Oklahoma in the Graham v. Henry case and the latest cases out of the Southern District of Ohio, Spangler v. Collins in 2012. All those courts have addressed the same exact issue. All of them have rejected that this is a recognized constitutional right. Could the state or the federal government pass this law? Yes, the state — states could. I think some states have. It's my understanding Texas has not. And whether that's going to be up in the next legislative session in the spring, I'm not sure. But they could have a residency restriction. We know that this right to live — Were you sued by the federal government if they did? I — Because you said there was some — or he said there was some law and some funds or something earlier. We know that there's no fundamental right to live wherever one desires because of a basic municipal concept that's firmly entrenched in the law — zoning.  I think we got your argument on that. You got some other points? Let me — yes, yes, sir. Let me end with one other point I'd like to address. It really deals with the 1983 claim. If you look at the district court, Mr. Duarte expressly abandoned all the claims except for equal protection and due process. The district judge dismissed all the claims, all of them, including the 1983 claim. In this court, if you look at the three issues that are in their brief, there's nothing in there about the district court erring in dismissing the 1983 claim. There's no — there's no analysis or briefing on it in their brief at all. And they say they waive everything on appeal except for due process and equal protection. So they have waived their 1983 claim, and it was dismissed in the district court. As this court is aware, 1983 exists to provide a right of action and a remedy for constitutional violations. Without a 1983 claim, their due process and equal protection claims are not actionable. A claim without a remedy is, in effect, a request for an advisory opinion. We know under Article III, courts cannot give advisory opinions. So we believe, because there's no briefing on it, there's not an issue on it, and even if — even if this court found that there's a due process violation that's actionable or equal protection, because that 1983 is not there to effectuate that constitutional right, the district court's judgment on that basis alone should be affirmed. Thank you. Okay. Thank you very much, Mr. Messer. Okay. Back to you, Mr. Gladden. Thank you. Briefly, on the last point, Ray, our position is, is that every time someone appeals from an adverse judgment on a constitutional claim, the appellant should not have to brief the right to attorney's fees under Section 1988, the right to receive court costs should they ultimately prevail, the theory of municipal liability, which was not even raised in a motion for summary judgment. Between the magistrate's recommendation and when we objected to the district court, we intentionally said we're not going to continue with the ex post facto claim, the double jeopardy claim, and I think that's what the district court understood. There was not any discussion in their motion for summary judgment. They made no claim that we weren't entitled to attorney's fees, because that was not an issue, or court costs, which they're also claiming we waived. Those are remedies for constitutional violations, and I would submit to you that those issues were never right, had not been raised in the motion for summary judgment, and that we, therefore, did not waive anything by not briefing municipal liability on appeal, etc. Now, back to the next thing I want to deal with briefly. The fact that the city is claiming that there may or may not be additional houses now than there was in 2012 and prior to 2012 is not relevant in this case, because our claim is to damages that occurred prior to 2012, which was before the Court of Appeals' decision on the last time we were here. And so the question is, is whether we had a liberty interest prior to 2012. You've got the map for 2012. You've got a prior decision saying there were nine homes out of 37,000 homes. That's where I came up with the .025. I don't think the availability of housing, and I don't think the rule should be as whether it should be .025 or something more than .025. The question is, is whether you're going to adhere to the U.S. Supreme Court cases that say establishing a home is a liberty interest. In fact, they say it's a fundamental liberty interest, but we don't think the Court has to reach it. You just have to say that it's sufficiently important that you must continue the analysis under Matthews v. Eldridge. I tried to mention a minute ago, this Court actually in Cabral, C-A-B-R-O-L v. Town of Youngsville, which I didn't cite in the brief, that's 106, Fed 3rd, 101, expressly states that the Fourteenth Amendment includes the liberty interest of an individual to establish a home and position in one's community. I don't know how much clearer you could be. Now— Does the time end in 2020? His registration requirement will end in 2020. And therefore, the ordinance no longer apply to him? That's correct. That's irrelevant to whether in the past he suffered injury. That's correct, or whether he has a—he would have to show a denial of procedural due process. Of course, he'd be entitled to nominal damages even under Cary v. Pythas, even if he was able—all the plaintiffs weren't able to show anything more than nominal damages or a constitutional violation. That's why it wasn't moved the last time around. It's because—and the Court didn't have to get into prospective equitable relief. It's because we did have the damage claim. So what he's saying about any change in the number of homes that existed from 2000 forward, that's just irrelevant to our damage claim. How is your case different than all the cases cited in Oklahoma and all these other cases? Okay, those were all substantive due process cases, and each one of the quotes he provided says it's not a fundamental right to choose where you live. But none of those cases addressed Meyer v. Nebraska or the numerous cases since then, all of which have said you have a liberty interest to establish a home. All they did was it was kind of one followed the other, and they're mostly smaller courts. Of course, I've told you that the California Supreme Court ruled within the last year that even people on parole have a liberty interest that they are deprived of with these residency restriction ordinances. And so when he says there's not any cases out there, and I cite other cases that under state constitutional provisions found that there were liberty interests, and those are in my brief. The only case you cite in all your equal protection argument is Cleburne, right? Do you want to take the moment to give us any closer case? No. No, I think the equal protection thing is they still haven't come up with a rational basis for that distinct— That's your primary argument? That is it. And they came up with some kind of—to avoid conflict with a state court district judge, the state probation condition doesn't regulate where someone can live, and the ordinance does. And so the fact that a district judge may say you can go physically wherever you want to does not—would never conflict with whether you can live somewhere within 1,500 feet. And so there just is no legitimate justification. I appreciate your time, and I did listen to the Mesa argument where you distinguished with the state of Texas, the Attorney General's office said that—not Mesa—in Jennings v. Owens, the Attorney General said, at your questioning on rebuttal, that a different analysis would apply for someone who's not on parole or probation, that those people would have a liberty interest to be free from sex offender conditions. That was on your question on rebuttal by the Attorney General's office in Jennings v. Owens. Thank you. Okay. Thank you, gentlemen. I appreciate your argument. And we will take a 10 or 15-minute recess before we take up the next case.